T.C. Memo. 2013-71

UNITED STATES TAX COURT

MOHAMMED A. REHMAN, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 24601-10.                    Filed March 12, 2013.

Mohammed A. Rehman, pro se.

<u>Marissa J. Savit</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

MORRISON, <u>Judge</u>:  The respondent in this case (the IRS) issued a notice of

deficiency to the petitioner, Mr. Mohammed Rehman, for tax year 2007.  The

$4,493 deficiency arose because the IRS denied some of the income-tax deductions

that Rehman had claimed on his 2007 tax return.

[*2]  Rehman claimed several deductions on Schedule A, Itemized Deductions, and Schedule C, Profit or Loss From Business, of his return.  The IRS disallowed three Schedule A deductions (all of which were disallowed in full) and eight Schedule C deductions (some of which were disallowed in full, some of which were disallowed in part).  Listed in the table below are all the deductions that the IRS disallowed, fully or partially, in the notice of deficiency--with the exception of a $4,929 interest deduction Rehman claimed on his Schedule C that is no longer at issue.[1]  Also listed are the amount that Rehman claimed for each deduction, the amount of the deduction the IRS allowed, and the amount at issue.

| Schedule A deductions | Claimed | Allowed | Amount at issue |
|---|---|---|---|
| Medical and dental expenses | $23,283 | -0- | $23,283 |
| Charitable contribution | 5,500 | -0- | 5,500 |
| Unreimbursed employee business expenses | 9,440 | -0- | 9,440 |

[1]This deduction was disallowed in full in the notice of deficiency.  The IRS later conceded, by stipulation, that Rehman was entitled to $925.43 of the deduction.  As to the remaining claim of $4,003.57, Rehman conceded at trial that he was not entitled to the deduction.

| [*3] Schedule C business deductions (except interest expense deduction) | Claimed | Allowed | Amount at issue |
|---|---|---|---|
| Utilities | $960 | -0- | $960 |
| Meals and entertainment | 2,387 | -0- | 2,387 |
| Travel | 7,490 | -0- | 7,490 |
| Supplies | 6,810 | $3,047 | 3,763 |
| Legal and professional services | 2,750 | 434 | 2,316 |
| Advertising | 850 | -0- | 850 |
| Other expenses: | 12,989 | 4,090 | 8,899 |
|    "Books Magazines for business" | 1,250 | -0- | 1,250 |
|    "Subscription for Trading Tips" | 1,299 | -0- | 1,299 |
|    "Educational Expenses" | 9,990 | 4,090 | 5,900 |
|    "Business Gifts" | 450 | -0- | 450 |

Rehman timely filed a petition under section 6213(a) for redetermination of the deficiency.[2] We have jurisdiction under section 6214.

The issue in this case, after concessions, is whether Rehman is entitled to any or all of the above deductions in amounts beyond those the IRS allowed in the notice of deficiency or subsequently conceded. We hold that he is not entitled to

---

[2] All section references are to the Internal Revenue Code as in effect for the 2007 tax year. All Rule references are to the Tax Court Rules of Practice and Procedure.

[*4] any deductions in amounts greater than the amounts the IRS has already allowed in the notice of deficiency or has conceded.

## FINDINGS OF FACT

Some of the facts have been stipulated; those facts are so found. At the time of filing of the petition, Rehman resided in Long Island City, New York.

From January to May of 2007, the tax year at issue, Rehman was employed as a marketing outreach representative for a company called Fidelis, where he had been working since about 2000.[3] Rehman's job was to help clients, especially low-income clients, sign up for assistance with New York State health insurance benefits. In that role Rehman would visit clients or potential clients in their homes to explain how Fidelis could help them get insurance, and he would help new clients fill out the necessary paperwork. On his workdays Rehman traveled to visit clients (by public transit or by taxi), and he traveled (by taxi) to restaurants to eat lunch.

Starting sometime before May 2006 and continuing into 2007, Rehman suffered from back pain, and he sought medical treatment for his back.

---

[3]The parties stipulated that Rehman's employer was Fidelis; Rehman also testified that his employer was Fidelis. However, for some reason Rehman's 2007 Form W-2, Wage and Tax Statement, named "New York State Catholic Health Plan, Inc." as his employer.

**[*5]**   From January 17 to 26, 2007, Rehman traveled to and stayed somewhere in Las Vegas, Nevada.  A trade fair for the wood-products industry took place somewhere in the same city from January 23 to 26, 2007.  On this trip and on two subsequent trips to Las Vegas (September 18 to 21, 2007 and December 17 to 20, 2007), Rehman gambled or attended shows at night.  He saved some receipts from shows he attended and meals he purchased during the Las Vegas trips.

Rehman left his job with Fidelis in May 2007.  He then began working as a self-employed securities trader[4] and later created a limited liability company, Chemical & Technology Professional, LLC, for his securities-trading business.  He operated the business out of his apartment.  After leaving Fidelis, Rehman continued to take taxis to restaurants to eat lunch.  Rehman purchased office supplies for the business, including a computer, in August.

From September 18 to 21, 2007, Rehman again visited Las Vegas.  Somewhere in Las Vegas, a trade fair for the online financial-services industry began or took place the day before he arrived.

On or around December 10, 2007, Rehman used the website legalzoom.com to generate the forms necessary to file for limited-liability-company status for

---

[4]He had begun working as a self-employed securities trader no later than August 2007.

**[*6]** Chemical & Technology Professional, LLC. The $434 the IRS allowed as a deduction for legal and professional services is for the expense he incurred using this website.

From December 17 to 20, 2007, Rehman again visited Las Vegas.

During 2007 Rehman paid an organization called the Online Trading Academy for training related to his securities-trading business. The $4,090 the IRS allowed as a deduction for educational expenses is for the cost of this training.

At some point between December 2007 and March 2008 Rehman paid a company called Hubco to advertise the creation of Chemical & Technology Professional, LLC, in local publications, and Hubco placed the advertisements in March 2008.

On or around February 23, 2008, Rehman filed a 2007 Form 1040, U.S. Individual Income Tax Return. On it he reported income and claimed deductions, including the deductions summarized in the tables supra pp. 2-3. He also reported gains and losses from the sale of securities.

On or around April 11, 2008, Rehman filed a 2007 Form 1040X, Amended U.S. Individual Income Tax Return, on which he reported gains and losses from securities sales that had not been finalized at the time he filed his Form 1040. The

**[*7]** amended return did not report different amounts for any of the deductions in question.

The IRS sent Rehman a notice of deficiency determining a deficiency of $4,493. The notice of deficiency did not challenge Rehman's reporting of gains and losses from the sale of securities. The notice of deficiency indicated that Rehman had earned $6 in unreported interest income, but he conceded this issue at trial. The notice also contained the redetermined deductions summarized in the tables supra pp. 2-3. Rehman timely petitioned this Court for redetermination of the deficiency.

OPINION

We address some general issues before examining the deductions disallowed in the notice.

The taxpayer generally bears the burden of proving that the determinations in the notice of deficiency are incorrect. Rule 142(a(1); Welch v. Helvering, 290 U.S. 111, 115 (1933); Jackson v. Commissioner, 73 T.C. 394, 400 (1979). Section 7491(a) shifts the burden of proof to the IRS with respect to a given factual issue where a taxpayer (1) introduces credible evidence with respect to that issue, (2) meets all applicable substantiation requirements, (3) complies with all recordkeeping requirements, and (4) cooperates with any reasonable requests for

[*8] information.  Higbee v. Commissioner, 116 T.C. 438, 440-441 (2001).

Rehman has not demonstrated that the requirements of section 7491(a) have been

met.  Therefore, the burden of proof remains with Rehman.

Under the Cohan rule, if a taxpayer establishes that a deductible expense has

been incurred but cannot establish the precise amount of the deductible expense, the

Court may estimate the amount.  See Cohan v. Commissioner, 39 F.2d 540, 543-544

(2d Cir. 1930).  In making the estimate, the Court bears heavily against the taxpayer

who failed to more precisely substantiate the deduction.  See id. at 544.  The Court

will not estimate a deductible expense unless the taxpayer presents a sufficient

evidentiary basis on which an estimate can be made.  See Vanicek v. Commissioner,

85 T.C. 731, 742-743 (1985).  The Cohan rule is superseded--that is, estimates are

not permitted--for certain types of expenses, including entertainment, travel, and

meals.  Sec. 1.274-5T(a), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov.

6, 1985).

We now evaluate each of the disallowed deductions in turn.

1.    Schedule A itemized deductions

A.    Medical expenses

An individual taxpayer is permitted a deduction for expenses paid during

the tax year for medical care of the taxpayer, the taxpayer's spouse, or the

[*9] taxpayer's dependent, to the extent that such expenses exceed 7.5% of adjusted gross income. Sec. 213(a).

Rehman introduced sufficient evidence through medical records and his own testimony to convince us that he received medical care for back pain, including a diagnosis at "Stand-Up MRI of Brooklyn, P.C." However, there is nothing in the record beyond his own testimony to indicate how much he paid for that treatment or in what year he made any payments. His testimony about amounts allegedly paid is implausible and unconvincing. He claimed, for example, that he paid a doctor $20,000 in cash for back surgery, but he gave inconsistent explanations of where the back surgery was performed, he failed to introduce into evidence any receipt or record of the payment for the surgery, and he testified unconvincingly that he could not find such a receipt or record because the doctor had simply disappeared. We are not required to find this self-serving and unsupported testimony to be sufficient to prove that Rehman paid any amount for back surgery in 2007 or that the surgery even took place. See Tokarski v. Commissioner, 87 T.C. 74, 77 (1986); Hradesky v. Commissioner, 65 T.C. 87, 90 (1975), aff'd per curiam, 540 F.2d 821 (5th Cir. 1976).

Rehman also testified that he paid approximately $2,500 to a dentist for bridgework but that he did not have documents or receipts for the work because,

**[\*10]** again, the dentist had simply disappeared. While we are persuaded that Rehman had bridgework at some time in his life, we do not believe his explanation for the lack of documents or receipts, and we are not persuaded that he spent $2,500 on dental care in 2007. Furthermore, the record does not allow us to reasonably estimate the amount of the dental expenses that Rehman incurred in 2007. Therefore, he is not entitled to a deduction for dental expenses for 2007. See Vanicek v. Commissioner, 85 T.C. at 743.

We hold that Rehman is not entitled to any deduction for medical or dental expenses for 2007.

B. Charitable contributions

Section 170(a) allows a deduction for any charitable contribution made by a taxpayer during the taxable year. A charitable contribution is defined as "a contribution or gift to or for the use of" a charitable organization. Sec. 170(c). Rehman claims that he made a charitable donation of $5,500 in 2007 to a resident of India named Atiqur Rahman. An individual is not a charitable organization, and nothing in the record shows that Rahman was authorized to accept donations on behalf of a charitable organization. Therefore, Rehman has failed to carry his burden of proving that he is entitled to a charitable-contribution deduction.

**[*11]** C.     <u>Unreimbursed employee business expenses</u>

Section 162 allows a taxpayer to deduct all ordinary and necessary expenses paid or incurred by the taxpayer in carrying on a trade or business.  Sec. 162(a).  An expense is "ordinary" if it is "normal, usual, or customary" in the taxpayer's trade or business.  <u>See</u> <u>Deputy v. du Pont</u>, 308 U.S. 488, 495 (1940).  An expense is "necessary" if it is "'appropriate and helpful'" in the taxpayer's business, but it need not be absolutely essential.  <u>Commissioner v. Tellier</u>, 383 U.S. 687, 689 (1966) (quoting <u>Welch v. Helvering</u>, 290 U.S. at 113).  Whether an expense is deductible under section 162 is a question of fact to be decided on the basis of all the relevant facts and circumstances.  <u>Cloud v. Commissioner</u>, 97 T.C. 613, 618 (1991) (citing <u>Commissioner v. Heininger</u>, 320 U.S. 467, 473-475 (1943)).

Performing services as an employee qualifies as a trade or business; thus, an employee may deduct expenses that are ordinary and necessary to his or her employment.  <u>See</u> <u>Lucas v. Commissioner</u>, 79 T.C. 1, 6 (1982).  A taxpayer employee may deduct only expenses for which he or she could not have been reimbursed by an employer.  <u>Id.</u> at 7; <u>Podems v. Commissioner</u>, 24 T.C. 21, 22-23 (1955).

**[*12]**      i.      <u>Commuting and travel expenses</u>

The unreimbursed employee expense deductions Rehman claimed relate to the expense of traveling to and from client sites, the expense of buying lunch on the way to or from those visits, and the expense of traveling to and from the restaurants at which he ate lunch.[5]

Some work-related transit expenses are generally nondeductible.  For instance, expenses incurred for a taxpayer's daily meals and for commuting[6] between the taxpayer's residence and the taxpayer's place of business are generally nondeductible personal expenses.  Sec. 262(a); <u>see, e.g.</u>, <u>United States v. Correll</u>, 389 U.S. 299, 302 (1967); <u>Commissioner v. Flowers</u>, 326 U.S. 465, 472-473 (1946); <u>Barry v. Commissioner</u>, 54 T.C. 1210, 1214 (1970), <u>aff'd per curiam</u>,

---

[5]The travel costs were the cost of taxis and Metropolitan Transit Authority fares.

Although Rehman claimed the expenses of traveling to and from client sites and to and from lunch (and the costs of lunch) throughout the year, we evaluate the deductibility of these expenses as unreimbursed employee business expenses only for the period from January 1, 2007 to May 3, 2007, the period he was employed by Fidelis.

[6]From Rehman's testimony and brief it is not clear whether he is seeking a deduction for commuting expenses or for expenses attributable to travel away from home.  We consider both alternatives.

**[\*13]** 435 F.2d 1290 (1st Cir. 1970); <u>see also</u> secs. 1.162-2(e), 1.262-1(b)(5),

Income Tax Regs.[7]

However, there at least two situations[8] in which commuting expenses may be deductible. <u>See</u> <u>Curphey v. Commissioner</u>, 73 T.C. 766, 777-778 (1980); <u>Schurer v. Commissioner</u>, 3 T.C. 544 (1944); <u>see also</u> <u>Bogue v. Commissioner,</u> T.C. Memo. 2011-164 (discussing in detail the origin of and reasons behind the exceptions). One exception, the so-called home-office exception, requires that a taxpayer's residence be his or her principal place of business. <u>See</u> <u>Strohmaier v.</u>

---

[7]Expenses incurred on transportation between two separate places of business, on the other hand, are deductible as ordinary and necessary business expenses. <u>Steinhort v. Commissioner,</u> 335 F.2d 496, 503-504 (5th Cir. 1964), <u>aff'g and remanding</u> T.C. Memo. 1962-233; <u>Heuer v. Commissioner,</u> 39 T.C. 947, 953 (1959), <u>aff'd per curiam,</u> 283 F.2d 865 (5th Cir. 1960). Rehman did not claim that any of the expenses he incurred were for trips between two separate places of business; he did not explain whether he had multiple client visits in any one day. The lack of detailed information in his testimony and the documents he submitted means that he did not meet his burden to show he is entitled to any deduction for transportation expenses of the type considered in <u>Steinhort</u>.

[8]A third potential route toward deducting commuting expenses, the so-called regular-work-location exception, can be found in Rev. Rul. 99-7, 1991-1 C.B. 361. This exception does not derive from our precedent. <u>Bogue v. Commissioner,</u> T.C. Memo. 2011-164, slip op. at 35. It would, if valid, allow a taxpayer to deduct the cost of traveling between a residence and temporary work locations if the taxpayer also has a regular work location away from his or her residence. Rev. Rul. 99-7, <u>supra</u>. We need not consider this purported exception because there is no evidence in the record indicating whether Rehman had a regular work location away from his residence during the relevant period.

**[\*14]** <u>Commissioner</u>, 113 T.C. 106, 113-114 (1999); <u>Curphey v. Commissioner</u>, 73 T.C. at 777-778. It allows a deduction for commuting expenses incurred between the taxpayer's principal place of business (his or her residence) and another place of business. There is no evidence in the record indicating whether Rehman's residence was his principal place of business when he worked for Fidelis. The second exception, the so-called temporary-distant-worksite exception, applies to expenses incurred outside the metropolitan area of--or an unusual distance from--the taxpayer's residence. <u>See</u> <u>Schurer v. Commissioner</u>, 3 T.C. at 547; <u>see also</u> <u>Peurifoy v. Commissioner</u>, 358 U.S. 59, 60 (1958) (observing that the exception exists in the Tax Court's precedent). This exception is not relevant here because all of Rehman's transportation expenses were incurred in the New York City area.

Rehman has the burden of proving that he is entitled to an exception in order to be able to deduct any commuting costs. He has introduced no evidence from which we could conclude that an exception applies. Therefore, we hold that Rehman is not entitled to deduct as commuting expenses any of the unreimbursed employee business expenses he claimed.

Traveling expenses are treated differently from commuting expenses. Some traveling expenses, including amounts expended for meals and lodging, may be

**[\*15]** deducted if they are incurred while the taxpayer is away from home in the pursuit of a trade or business. Sec. 162(a)(2). To deduct a travel expense, the taxpayer must show that (1) he or she was away from home when he or she incurred the expense, (2) the expense is reasonable and necessary, and (3) the expense was incurred in pursuit of a trade or business. See Strohmaier v. Commissioner, 113 T.C. at 115; see also Commissioner v. Flowers, 326 U.S. at 470 (interpreting a predecessor to section 162(a)(2)). Under the rule of Correll, 389 U.S. 299, for a taxpayer to be considered "away from home" within the meaning of section 162(a)(2), the taxpayer must be on a trip that requires the taxpayer to stop for sleep or a substantial period of rest. See also Strohmaier v. Commissioner, 113 T.C. at 115.

Under this section 162(a) framework, as interpreted in Correll,[9] Rehman's trips would have to be trips "away from home" for the corresponding expenses to be deductible. But all of Rehman's trips for Fidelis took place in the New York City area. At no point did Rehman show the client visits took place far enough away from his home or workplace that he needed to take overnight trips to get to them or to stop to take substantial periods of rest on the way to or from the visits.

---

[9]This "trips-away-from-home" analysis from United States v. Correll, 389 U.S. 299 (1967), is distinct from the commuting expenses analysis discussed above.

[*16] Because there is no evidence to show that the trips took place away from home, we need not consider whether the expenses were reasonable and necessary or whether they were incurred in pursuit of a trade or business. Rehman has not met his burden of proving that he is entitled to deductions for expenses incurred for travel away from home.

Even if these expenses did satisfy the Correll test, Rehman would have to substantiate the expenses in order to be entitled to a deduction. In addition to the requirements of section 162, section 274(d) provides that "any traveling expense" (including meals while traveling) is not deductible unless the taxpayer "substantiates" (1) the amount of the expense, (2) the time and place of the travel, and (3) the business purpose of the expenditure.[10] Because his claimed unreimbursed employee business expenses are attributable to travel (and meals consumed while traveling), Rehman must satisfy section 274(d) to deduct them.

---

[10]Expenditures related to "listed property", which includes passenger vehicles, must also satisfy these strict substantiation requirements. Sec. 280F(d)(4)(A)(i). We need not decide whether Rehman's taxi expenses should be classified as listed property expenses rather than travel expenses because the same substantiation requirements apply in either case.

[*17] Rehman introduced into evidence a daily log containing the headings "Date", "Description", and "Amount".[11] For January through May (the period he worked for Fidelis), the entries in the log are labeled either "Home Visit" or "Lunch". For all entries labeled "Lunch", the amount is given as $10. For the entries labeled "Home Visit", the amount varies. For some days it is $10; for other days it is $14, $20, or $30.

For Rehman's daily log to "substantiate" his expenses under section 274(d), the entries in the log should have been made on or near the dates of the client visits and lunches. See sec. 1.274-5T(c)(2)(ii), Temporary Income Tax Regs., 50 Fed. Reg. 46014, 46017 (Nov. 6, 1985). For Rehman's daily log to qualify, therefore, the entries would have to have been made at different dates corresponding to the dates of the client visits and lunches. However, it appears that Rehman prepared the log in one fell swoop long after the dates in question. See infra part 2.B. Therefore, Rehman's attempts to substantiate the deductions he claimed for travel and lunches do not meet the requirements of section 274(d).

---

[11]Rehman also introduced into evidence what he said was a list of his clients. The list, however, does not contain any of the information required by sec. 274(d), i.e., the amount of any expenditure, the time and place of any expenditure, or the business purpose of any expenditure.

[*18] Furthermore, Rehman has not shown that he was ineligible for reimbursement from Fidelis, his employer, for his transportation expenses. Rehman did not claim that Fidelis lacked a reimbursement policy; indeed, no evidence regarding Fidelis's reimbursement policy or lack thereof is in the record at all. Thus, Rehman has failed to carry his burden of proving that he was not eligible for reimbursement from his employer and thus has failed to show that he is entitled to unreimbursed employee expense business deductions of any kind.

Thus, we hold that Rehman has not shown that he is entitled to a deduction for unreimbursed employee business expenses for commuting or travel.

### ii. Meals expenses

Although Rehman is not entitled to deduct his meals expenses under the travel-away-from-home framework, it is conceivable that, alternatively, he might be able to deduct the cost of the lunches as meals and entertainment expenses under section 274. Expenses for lunch meetings with clients can be deductible[12] business expenses if directly related to the active conduct of a taxpayer's trade or business. Sec. 1.274-2(c)(3), Income Tax Regs.

---

[12]That is, 50%-deductible under sec. 274(n).

**[*19]** But Rehman ate alone.  He has not met his burden of showing that the lunches related to the conduct of his business at all.  Thus, the lunch expenses are nondeductible personal expenses.

2.      Schedule C business expense deductions

   A.      Utilities

To deduct any portion of the expenses attributable to business use of a home, section 280A(c)(1) requires that the taxpayer use a portion of the home exclusively for business.

Rehman claimed a deduction for the cost of utilities in his home, a one-bedroom apartment.  He testified that he used the living room--one room out of the three rooms in his apartment--exclusively for business purposes.  But Rehman supplied no information about the layout of his apartment that could make this assertion seem credible, and he was not a credible witness.  We need not accept his unsupported testimony.  See Tokarski v. Commissioner, 87 T.C. at 77.  Since he has not shown that he used any portion of his home exclusively for business, Rehman may not deduct any portion of his utilities expenses.

**[*20]** B.     <u>Meals and entertainment in the New York City area after Rehman left Fidelis</u>

On his Schedule C attached to his Form 1040, Rehman claimed a $2,387 deduction for meals and entertainment and a $7,490 deduction for travel. A portion of each of these amounts, Rehman claimed, was attributable to the cost of eating lunch in the New York City area. To prove he incurred these costs, Rehman relies on the daily log referred to earlier. For the period after his job with Fidelis ended the entries in the log are labeled either "Travel" or "Lunch". For all entries labeled "Lunch" the amount is given as $10. For all entries labeled "Travel" the amount is $14. We understand from Rehman's testimony that each $10 entry supposedly corresponds to a restaurant bill and that each $14 entry supposedly corresponds to the taxi fare from his apartment to the restaurant and back.

There is no evidence that the restaurant lunches were related to Rehman's business. Therefore, Rehman has failed to satisfy his burden of proving that the taxi and restaurant expenses are ordinary and necessary business expenses.

Furthermore, a deduction is not allowed for meals and entertainment expenses unless the taxpayer properly substantiates: (1) the amount of such expense, (2) the time and place of the expense, (3) the business purpose, and (4)

[*21] the business relationship between the taxpayer and the persons being entertained. Sec. 274(d). The portions of the daily log referred to above do not contain any information about elements (3) and (4). The daily log therefore does not contain the information necessary to satisfy the requirements of section 274(d).

And although the log purports to set forth the amount and the date of each expense, we are convinced the entries in the log were not made at or near the time any expenses were incurred. The timing of the entries in his daily log of expenses is suspect for several reasons. For example, Rehman initially testified that the $10 "Lunch" and $14 "Travel" expenses recorded on his log for September 19 and 20 were incurred for lunches in New York, but when confronted with evidence that he was in Las Vegas from September 18 to 20, he changed his testimony to say that the log entries for those dates were actually for expenses incurred in Las Vegas.[13] However, the log entries for September 19 and 20 were indistinguishable from those purportedly made on surrounding dates. Therefore we conclude that the log is not contemporaneous or reliable. A noncontemporaneous log alone does

---

[13]See infra pt. 2.C. for our evaluation of the deductibility of expenses incurred on those trips.

**[\*22]** not satisfy the requirements of section 274(d).  Sec. 1.274-5T(c)(2)(ii),

Temporary Income Tax Regs., <u>supra</u>.[14]

Accordingly, we hold that Rehman is not entitled to a meals-and-

entertainment-expense deduction for the lunches in the New York area.

C.    <u>Travel expenses and meals and entertainment expenses incurred in Las
      Vegas</u>

Rehman asserts that some of the Schedule C travel, meals, and entertainment

expenses he claimed on his Form 1040 are deductible expenses incurred during

three trips he took to Las Vegas in 2007.

A taxpayer may claim a deduction for travel expenses that are

reasonable, necessary, and directly attributable to the taxpayer's business.  Sec.

162(a)(2); sec. 1.162-2(a), Income Tax Regs.  If the trip is undertaken for both

business and personal reasons, travel expenses are deductible only if the primary

purpose of the trip is business.  <u>See</u> sec. 1.162-2(b)(1), Income Tax Regs.

Whether the primary purpose of the trip is business or personal depends on all the

facts and circumstances, in particular, the amount of time during the trip that the

---

[14]These log entries are largely unsupported by outside evidence.  Rehman testified unconvincingly that the expenses listed in the log would have been substantiated with receipts but that they had been in a briefcase that was stolen in February 2008.

[*23] taxpayer devoted to business and personal activities.  Sec. 1.162-2(b)(2), Income Tax Regs.[15]

Rehman traveled to Las Vegas three times for, he claims, various conferences related to his work as a securities trader.  He submitted receipts for some of the expenditures made in Las Vegas; all of the receipts are for meals, entertainment, or transportation.  He also testified that he gambled at night while in Las Vegas.  Other than his own testimony, there is nothing in the record to show that the primary purpose of the trip was business-related and not personal. Rehman introduced into evidence two announcements for trade fairs being conducted in Las Vegas around the time he was there--one in the wood products industry, and the other in the online financial-services industry--but these notices do not prove that Rehman attended the trade fairs or, if he did, that any expenses incurred to attend them were ordinary and necessary to his business as a securities trader.[16]  Rehman did not meet his burden of proving that the expenditures were

---

[15]In addition to the requirements of sec. 162, deducting expenses attributable to travel (including meals while traveling) requires the taxpayer to meet the substantiation requirements of sec. 274(d).  See supra pt. 1.C.

[16] Indeed, the financial-services fair seems to have taken place or at least begun the day before Rehman arrived in Las Vegas.

[*24] ordinary and necessary to his business. We therefore hold that he is not entitled to a deduction for travel expenses.

D.    Supplies

A taxpayer may deduct the cost of supplies if the cost is an ordinary and necessary expense directly connected with the taxpayer's business. Sec. 162(a); sec. 1.162-1(a), Income Tax Regs.

To support his claim for a deduction for supplies, Rehman introduced a list of expenses that showed: (1) the date, (2) a description, and (3) the amount he spent on various purchases. However, the list does not show that the expenses were related to Rehman's business as a securities trader. Rehman did not testify that the expenses were related to his business. Without further evidence of the relationship to his business, Rehman has failed to satisfy his burden of proving he is entitled to deduct the $3,763 at issue for supplies.

E.    Legal and professional services

A taxpayer may deduct the costs of legal and professional services if the costs are ordinary and necessary and directly connected with the taxpayer's business. See sec. 162; Levenson & Klein, Inc. v. Commissioner, 67 T.C. 694, 719-721 (1977) (legal services); sec. 1.162-1, Income Tax Regs.

**[\*25]** The IRS has already allowed a deduction for the $434 that Rehman spent generating necessary paperwork for the creation of an LLC on legalzoom.com. Rehman asserts that he also made a cash payment to a lawyer who he can no longer contact or find. He has introduced no receipt, invoice, or bill, and he did not explain what the payment was for. His testimony is not credible, and there is no other evidence that Rehman spent any more money on legal and professional services related to his business than the $434 the IRS already allowed.[17] Rehman has not met his burden of proof. We hold that Rehman is not entitled to any greater deduction for legal and professional services expenses than the $434 the IRS allowed.

    F.    <u>Advertising</u>

A taxpayer may deduct the cost of advertising if the cost is an ordinary and necessary expense directly connected with the taxpayer's business. Sec. 162(a); sec. 1.162-1(a), Income Tax Regs.

Rehman introduced into evidence a price quote from a legal services company, Hubco, stating that $799.95 was the price for Hubco to (1) advertise the

---

[17]Rehman introduced a log containing an entry which reads "Harpireet Singh Professional Services--$2,750.00". Rehman did not testify about the expenditure or in any way indicate what the service was. He did not establish that the expenditure was ordinary and necessary to his business.

[*26] creation of Rehman's LLC and (2) file affidavits of publication with the New York Department of State. The Hubco document read, in part: "If you would like for us to complete the publishing, please fill out the Credit Card information below & sign off on the proof." Rehman's signature and credit card information appear on the bottom of the page. Rehman also introduced a copy of a newspaper clipping and an affidavit of publication indicating that the advertisement ran from March 27 to May 1, 2008. He thus makes a plausible case that he incurred $799.95 (though not the full $850 he claimed) in advertising expenses connected with his business. However, there is no documentary evidence to indicate that the expenditure took place in 2007, the tax year at issue. Because the dates of publication were in 2008, not 2007, and because on cross-examination Rehman evaded questions about the date he paid Hubco and why he could not document the date of payment, we cannot conclude that the expenditure took place in 2007. Rehman has not met his burden of proving that he is entitled to a deduction for advertising for 2007.

G.    Other expenses

Rehman claimed a Schedule C deduction for "Other expenses", listing the following categories and amounts both in a handwritten log and on his Schedule C:

[*27] •  $1,250 for "BOOKS MAGAZINES AND DISC" (on the log, and

"Books Magazines for business" on the Schedule C);

•  $1,299 for "SUBSCRIPTION FOR TRADING TIPS";

•  $9,990 for "EDUCATIONAL EXPENSES"; and

•  $450 for "GIFT" and "GIFT CARD" (on the log, and "Business

Gifts." on the Schedule C).

Regarding the first, second, and fourth categories, we observe that Rehman's log contained entries corresponding to these categories. However, Rehman did not testify about the expenditures. He did not submit any other evidence about the expenditures, such as invoices or credit card receipts. The log featured nonchronological entries, suggesting it was not made contemporaneously with the expenditures. Under these circumstances, the log entries do not convince us that Rehman incurred the expenses. Rehman has not met his burden to show he is entitled to deductions for "BOOKS MAGAZINES AND DISC", "SUBSCRIPTION FOR TRADING TIPS", or "GIFT"/"GIFT CARD".

We now consider Rehman's claim that he is entitled to a deduction for "EDUCATIONAL EXPENSES". Expenses that a taxpayer incurs "in obtaining an education or in furthering * * * [the taxpayer's] education are not deductible unless they qualify under section 162 and § 1.162-5". Sec. 1.262-1(b)(9), Income

[*28] Tax Regs. The expenses must first qualify under the standards of section 162 to be deductible--that is, the expenses must be ordinary and necessary to the conduct of the business. And if they do qualify under section 162, then they must also meet the additional requirements applicable specifically to business-related educational expenses.

The IRS has conceded that Rehman is entitled to $4,090 of the $9,990 deduction he claimed for educational expenses. Thus, the amount in dispute is $5,900. Rehman's deduction relates to his alleged purchase of three sets of compact discs and digital video discs entitled, respectively: "Ultimate Professional Trader Plus CD Library", "Professional Trader CD/DVD Set Days One Through Three", and "Professional Trader CD/DVD Set Days Four Through Seven". Rehman possessed these discs at trial. However, his testimony about the purchase price of the discs was vague, unclear, internally inconsistent, and unsupported by any corroborating receipts or other documentary evidence. We are not persuaded that Rehman spent $5,900 on educational expenses beyond the $4,090 the IRS conceded. We cannot reasonably estimate any amount that he spent in excess of $4,090. See Vanicek v. Commissioner, 85 T.C. at 743.

We need not consider the additional requirements of the regulations, because Rehman has failed to satisfy his burden of proving that he is entitled

**[\*29]** under section 162 to any amount of educational-expense deductions beyond the $4,090 the IRS allowed.

We have considered all other arguments the parties have made, and to the extent that we have not discussed them, we find them to be moot, irrelevant, or without merit.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155</u>.