T.C. Summary Opinion 2019-16

UNITED STATES TAX COURT

THEODORE JAMES ZALESIAK, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 2416-18S.                    Filed July 15, 2019.

Theodore James Zalesiak, pro se.

<u>Eugene A. Kornel</u>, for respondent.

SUMMARY OPINION

ARMEN, <u>Special Trial Judge</u>: This case was heard pursuant to the

provisions of section 7463 of the Internal Revenue Code in effect when the

petition was filed.[1]  Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

For 2015 respondent determined a $7,961 deficiency in petitioner's Federal income tax and a $1,592 accuracy-related penalty under section 6662.  The deficiency in tax is principally attributable to the disallowance of "total expenses" of $19,811 claimed by petitioner on a Schedule C, Profit or Loss From Business, in respect of his gambling activity.  Of the $19,811 amount, $16,841 relates to gambling losses and the balance relates to nonwagering expenses (i.e., car, travel, and book expenses).

The parties agree that petitioner is entitled to $16,841 in deductible gambling losses for 2015.  However, the parties do not agree, and the principal issue for decision by the Court is, whether petitioner is entitled to deduct such gambling losses (and allowable nonwagering expenses) on his Schedule C as a professional gambler, or whether he may deduct his gambling losses (and allowable nonwagering expenses) only on Schedule A, Itemized Deductions, as a nonprofessional (amateur) gambler.  Further, after concessions by respondent and

---

[1] All subsequent section references are to the Internal Revenue Code (Code) in effect for 2015, the taxable year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

without regard to purely mechanical matters,[2] the Court must decide whether petitioner has substantiated deductions for nonwagering expenses, namely, car expenses and travel expenses, that he claims were related to his gambling activity.

Background

Some of the facts have been stipulated, and they are so found. The Court incorporates by reference the parties' stipulations of facts and accompanying exhibits.

Petitioner resided in the State of Illinois when the petition was timely filed with the Court.

Petitioner received a bachelor of science degree in education and social policy from Northwestern University. In or around 2008, near the end of his college education, petitioner began playing poker online, at in-person

---

[2] Respondent concedes that petitioner may deduct on either Schedule C or Schedule A, depending on petitioner's status as either a professional gambler or an amateur gambler, nonwagering expenses for (a) car and travel, but only to the extent both are allowable by law and properly substantiated, and (b) books in the amount of $38 (the amount claimed by petitioner). Respondent also concedes that if petitioner was an amateur gambler, petitioner is not subject to self-employment tax under sec. 1401 (and is not entitled to a deduction for one-half of such tax under sec. 164(f)). Further, respondent concedes that petitioner is not liable for the accuracy-related penalty under sec. 6662. Finally, the adjustment in the notice of deficiency regarding the amount of the deduction claimed by petitioner for student loan interest is mechanical.

tournaments, and at cash games. At some time during 2009 petitioner stopped working at a small job when he became successful playing online poker.

Around 2010 petitioner took a year off from playing poker "to establish a different career" with the intention of resuming playing poker after finding an alternative source of income. He obtained full-time employment as a construction manager in Chicago, a position that he has held with various companies through the date of trial. In 2011 petitioner passionately pursued poker on nights and weekends, and his construction manager position provided him with a substantial financial support system to "chase what * * * [he] really wanted to do full time". Although petitioner reported a small profit from poker in 2011, he did not profit from playing poker in 2012, 2013, or 2014.

Petitioner's income tax returns for the five years immediately preceding 2015, the taxable year in issue, listed his occupation as "manager" and reported the following:

|  | 2010 | 2011 | 2012 | 2013 | 2014 |
|---|---|---|---|---|---|
| Wages per return | $25,195 | $37,759 | $25,338 | $34,504 | $43,750 |
| "Total income" per return | [1]$24,398 | $41,660 | $31,885 | $36,055 | [1]$43,158 |
| Wages/"Total income" (percent) | 100 | 90.6 | 79.5 | 95.7 | 100 |
| Gross income from gambling (per Schedule C) | ([2]) | $33,020 | $30,289 | $110,314 | $15,835 |
| Gambling losses (per Schedule C) | ([2]) | ($29,119) | ($30,289) | ($110,314) | ($15,835) |
| Net profit (per Schedule C) | ([2]) | $3,901 | -0- | -0- | -0- |

[1] "Total income" is less than wages because of a reported capital loss.
[2] There is no entry on line 12 ("Business income or (loss)") of Form 1040, U.S. Individual Income Tax Return, consistent with the fact that around 2010 petitioner took a year off from playing poker.

In 2015, the taxable year in issue, petitioner worked as a construction manager for approximately 30 hours per week on average, with about one-third of his time working onsite. Petitioner occasionally engaged in poker-related activities when he was working remotely or when he had a break.

During the year in issue petitioner played poker in private games (i.e., at private residences) and at casinos, principally the Horseshoe Casino in Hammond,

Indiana.[3]  The Horseshoe Casino is about 20 miles from his home in Chicago. Petitioner claimed deductions for car expenses on the basis of mileage to and from the locations at which he played poker.  Almost invariably petitioner went from his residence to the casino or another location and would return to his residence afterwards.

Between May and September 2015 petitioner did not play poker or engage in poker-related activities because of his busy work schedule as a construction manager.  In contrast, during December 2015, having accumulated enough leave at work and because of a slowdown in construction projects during that time of the year, petitioner traveled out of State.  Petitioner tailored his December 2015 travel around poker tournaments or casinos located near family or friends.  For example, he played poker on Thanksgiving in Indiana while he was visiting family; he participated in a poker tournament in Baltimore, Maryland, while visiting an uncle in northern Virginia; and he played poker at a casino in Florida on Christmas after having dinner with his grandmother.  Petitioner's December 2015 travel "worked out perfectly that * * * [he] was able to get two birds with one stone", i.e., visit friends and family and play poker at various casinos and other locations.

---

[3] Petitioner did not play any online poker in 2015.

Petitioner alleges that he "spent about 271 days gambling, reviewing * * * [his] results, and studying relevant poker literature." Out of the 271 days that petitioner contends that he engaged in poker-related activities, he spent approximately 75 days playing poker. On the days he did not actually play poker, he watched videos, read books, and listened to podcasts. He did not track his time spent on poker-related activities.

Petitioner did not gamble in other forms (e.g., gambling on horse racing). Although petitioner wished to be a profitable poker player, he did not have a formal business plan regarding his poker activities, he did not teach poker in an official capacity, he did not accept any endorsements in relation to playing poker, and he was not featured in any televised poker tournaments. Petitioner, however, readily offered poker advice to others without charge.

Petitioner contemporaneously compiled a spreadsheet reflecting his poker activities, recording game locations, winnings, losses, and expenses (i.e., mileage, tolls, and hotel). He did not, however, have a separate bank account in which he deposited his winnings or withdrew funds to play poker.

Petitioner timely filed a 2015 Form 1040 reporting $58,999 of wages, which constituted 98.1% of his total reported income. Petitioner did not attach a Schedule A to his 2015 return but rather claimed the standard deduction. He did

attach to his 2015 return a Schedule C, Profit or Loss from Business, on which he

reported a net profit of $1,119 from poker, calculated as follows:

| | | |
|---|---:|---:|
| Gross income | | $20,930 |
| Less: | | |
| Car | $2,561 | |
| Travel | 371 | |
| Other: | | |
| Books | 38 | |
| Gambling losses | 16,841 | |
| | 16,879 | |
| | | |
| "Total expenses" | | (19,811) |
| Net profit | | 1,119 |

In Part IV ("Information on Your Vehicle") of Schedule C, petitioner indicated

that his vehicle was available for personal use and that in 2015 he drove 3,790

miles for "business", zero miles for "commuting", and 28,210 miles for "other".

At the start of 2017 petitioner lost a job that "allowed * * * [him] to have

the time available for * * * [poker]." After reflecting on his lack of meaningful

financial success playing poker in recent years[4] and the number of hours he put

into the activity, he decided it was preferable to move on to other endeavors,

friends, family, and hobbies. Although he still loves watching poker and visiting

---

[4] Petitioner's reporting history for 2010 through 2015 from playing poker appears in the text. See supra pp. 4-5. On his Schedule C for 2016 petitioner reported a net profit from playing poker of $34.

friends whenever they are doing well in tournaments, he no longer competes at the poker table.

## Discussion

### A. Burden of Proof

Generally, respondent's determinations in a notice of deficiency are presumed correct, and the taxpayer bears the burden of proving that those determinations are erroneous. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). The taxpayer likewise bears the burden of proving his entitlement to deductions allowed by the Code and of substantiating the amounts of items underlying claimed deductions. INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992). Section 7491(a) may place the burden of proof on the Commissioner as to a factual issue if the taxpayer introduces credible evidence with respect to that issue and satisfies certain other requirements. Petitioner did not allege that section 7491(a) applies, nor did he satisfy the requirements of that section. Accordingly, section 7491(a) does not apply, and petitioner bears the burden of proof.

### B. Amateur Versus Professional Gambler

In general, section 162(a) allows a deduction for all ordinary and necessary expenses paid or incurred during the taxable year in carrying on a trade or business. The term "trade or business" is not defined in the Code or regulations.

That said, caselaw makes clear that in order for an activity to be considered a trade or business for purposes of section 162, the activity must be conducted with "continuity and regularity" and "the taxpayer's primary purpose for engaging in the activity must be for income or profit." Commissioner v. Groetzinger, 480 U.S. 23, 35 (1987). A sporadic activity or a hobby does not qualify. Id.

Thus, to be a professional gambler, the taxpayer must have engaged in gambling with the objective of making a profit. Sec. 183(a), (b), and (c); Commissioner v. Groetzinger, 480 U.S. at 35; sec. 1.183-2(a), Income Tax Regs. The amount of time spent engaged in the activity is not the most significant aspect of the trade or business analysis; what is more important is the taxpayer's actual or honest objective of making a profit. See Keanini v. Commissioner, 94 T.C. 41, 46 (1990); Hulter v. Commissioner, 91 T.C. 371, 392 (1988); sec. 1.183-2(a), Income Tax Regs.; see also Dreicer v. Commissioner, 78 T.C. 642, 643-644 (1982), aff'd, 702 F.2d 1205 (D.C. Cir. 1983). Whether a taxpayer has an actual and honest profit objective is a question of fact to be answered on the basis of all of the relevant facts and circumstances. Hastings v. Commissioner, T.C. Memo. 2002-310; sec. 1.183-2(a), Income Tax Regs.

The pertinent regulations set forth a nonexhaustive list of facts that may be considered in deciding whether a profit objective exists. These factors include:

(1) the manner in which the taxpayer carries on the activity, (2) the expertise of the taxpayer or his adviser, (3) the time and effort expended by the taxpayer in carrying on the activity, (4) the expectation that assets used in the activity may appreciate in value, (5) the success of the taxpayer in carrying on other similar or dissimilar activities, (6) the taxpayer's history of income or losses with respect to the activity, (7) the amount of occasional profits, if any, which are earned, (8) the financial status of the taxpayer, and (9) the elements of personal pleasure or recreation.  Sec. 1.183-2(b), Income Tax Regs.; see Golanty v. Commissioner, 72 T.C. 411, 426 (1979), aff'd, 647 F.2d 170 (9th Cir. 1981); Boneparte v. Commissioner, T.C. Memo. 2015-128, at *10.

No single factor or group of factors is determinative.  Golanty v. Commissioner, 72 T.C. at 426; sec. 1.183-2(b), Income Tax Regs.  Although the focus of the test for whether a taxpayer engaged in the activity with intent to make a profit is on the subjective intent of the taxpayer, greater weight is given to objective facts than to the taxpayer's mere statement of his or her intent.  Sec. 1.183-2(a), Income Tax Regs.  In addition, not every factor is relevant to every case.  See generally Vandeyacht v. Commissioner, T.C. Memo. 1994-148.  Consequently, we do not analyze in depth all of the factors enumerated in the regulation but focus on some of the more important ones that inform our decision.

Petitioner testified at trial that engaging in poker-related activities consumed his nights and weekends for the year in issue. But simply spending all of one's free time on an activity does not transform the activity into a trade or business, nor does it make the participant a professional. In addition, petitioner stopped engaging in poker-related activities for a substantial period during the year in issue because his job as a construction manager would not permit him to continue playing poker at that time. He also took a trip in December 2015 and played poker in various cities, but it was possible only because he accrued enough leave to do so; and, notably, he visited family and friends in those cities during the trip (i.e., he "was able to get two birds with one stone").

Most importantly, petitioner relied on his full-time employment to substantially support his pursuit of poker. In 2015 petitioner's wages constituted 98.1% of his total income. Without his wages as a construction manager he could not have paid his rent or otherwise have supported himself, nor could he have indulged his passion for poker. Furthermore, he recognized the need for wage income, and he looked to employment, not poker, for his livelihood. Petitioner's reliance on employment for his livelihood is consistent with his characterization on his returns of his occupation as a "manager". Indeed, petitioner testified at trial

that self-describing himself as a "manager" "was always something that I would tell people that I was doing if they would ask me on a professional level."

In the five years immediately preceding the taxable year in issue petitioner's wages ranged from a low of 79.5% of his total income to 100%. Indeed, other than in 2015 and 2011, no part of petitioner's total income was attributable to gambling during the six-year period from 2010 through 2015. And even for those two years, income from gambling was a minor, if not a de minimis, percentage of petitioner's total income, as demonstrated by the fact that for 2015 his net profit from gambling was less than 2% of his total income and for 2011 it was less than 10%. See Commissioner v. Groetzinger, 480 U.S. at 35; Boneparte v. Commissioner, T.C. Memo. 2017-193; sec. 1.183-2(b)(6) and (7), Income Tax Regs.

The Court does not question that petitioner wished to win at poker. Nevertheless, for the reasons previously discussed and giving greater weight to objective facts than to petitioner's mere statement of intent, the Court holds that petitioner did not have the requisite profit objective to qualify his gambling activity as a trade or business for 2015. Lacking the requisite profit objective,

petitioner may deduct his poker-related losses and any allowable expenses only on Schedule A.[5]

## C. Gambling Losses, Car Expenses, and Travel Expenses

Having decided that petitioner was not a professional gambler in 2015, the Court turns now to the issue of substantiation.

Deductions are a matter of legislative grace, and taxpayers must prove entitlement to any deductions claimed. Rule 142(a); INDOPCO, Inc. v. Commissioner, 503 U.S. at 84. Taxpayers are required to identify each deduction, show that they have satisfied all requirements, and keep books or records to substantiate items underlying the deductions. Sec. 6001; sec. 1.6001-1(a), Income Tax Regs.

In the case of an activity not engaged in for profit, section 183(a) allows no deduction other than as allowed in section 183(b). As applicable to the present case, section 183(b)(2) allows "a deduction equal to the amount of the deductions which would be allowable * * * if such activity were engaged in for profit". See, e.g., Boneparte v. Commissioner, at *9-*10.

---

[5] Because petitioner is not considered a professional gambler, he is not (consistent with respondent's concession, see supra note 2) subject to self-employment tax, see secs. 1401 and 1402(a), or entitled to the deduction for one-half of such tax, see sec. 164(f).

The parties agree that petitioner is entitled to $16,841 in deductible gambling losses for 2015, and respondent has conceded that petitioner is entitled to a $38 deduction for the purchase of books. Thus, the Court must decide whether petitioner would be entitled to deductions for car expenses and for travel expenses if his poker activities had been engaged in for profit. Here a number of fundamental principles inform our decision.

As previously stated, under section 162(a) a deduction is allowed for ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business. However, personal, living, or family expenses are generally nondeductible. Sec. 262(a). In particular, expenses of daily commuting (unlike travel expenses, see sec. 162(a)(2)) are generally not deductible because such expenses constitute personal expenses. See sec. 1.262-1(b)(5), Income Tax Regs.; see also sec. 1.162-2(e), Income Tax Regs. Although there are exceptions to this general rule, see, e.g., Rehman v. Commissioner, T.C. Memo. 2013-71, at *13-*14, a taxpayer typically bears the burden of proving that an exception exists permitting the deduction of commuting expenses. Petitioner did not allege that any such exception applies, and the record does not support a finding sufficient to invoke any such exception.

Further, section 274(d) prescribes more stringent substantiation requirements that must be satisfied before a taxpayer may deduct certain categories of expenses, such as travel expenses (including meals and lodging while away from the taxpayer's home overnight) and car expenses. Thus, no deduction is allowed for such categories of expenses unless the taxpayer substantiates, by adequate records or by sufficient evidence corroborating the taxpayer's own statement, each of the following elements: (1) the amount of each separate expenditure; (2) the time and destination city or town, the date of return, and the time spent on business; and (3) the business reason or expected business benefit from the travel. See sec. 274(d); Niv v. Commissioner, T.C. Memo. 2013-82, at *9-*10.

Petitioner incurred car expenses when driving between his residence and poker venues such as the Horseshoe Casino in Hammond. Such expenses are personal expenses in the nature of commuting and do not qualify as deductible expenses. See sec. 1.262-1(b)(5), Income Tax Regs.; see also sec. 1.162-2(e), Income Tax Regs. On a few occasions petitioner may have driven to a poker venue directly from his employer's worksite; however, the Court may not estimate either the number of such instances or the mileage incurred given the strictures of

section 274(d).  See Schladweiler v. Commissioner, T.C. Memo. 2000-351, aff'd, 28 F. App'x 602 (8th Cir. 2002).

Finally, petitioner incurred expenses traveling in December 2015.  That travel appears to have been motivated more by personal considerations related to visiting family and friends over the holidays than by the desire to make money by playing poker, as petitioner could have played (and would have had more time to play) poker close to home had he not embarked on a multistate journey.  See Henry v. Commissioner, 36 T.C. 879, 884 (1961).  Accordingly, the Court holds that petitioner is not entitled to a deduction for his December 2015 travel expenses.

## Conclusion

In order to reflect the Court's disposition of the disputed issues, as well as respondent's concessions, see supra note 2,

Decision will be entered

under Rule 155.