T.C. Memo. 2021-89

UNITED STATES TAX COURT

JACOB BERGER AND EVELYN R. BERGER, Petitioners <u>v.</u>
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 17196-18.                              Filed July 15, 2021.

<u>Kenneth P. Fehl</u>, for petitioners.

<u>Michael Skeen</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

NEGA, <u>Judge</u>:  By notice of deficiency dated June 6, 2018, respondent

determined deficiencies in petitioners' Federal income tax and accuracy-related

penalties under section 6662(a)[1] as follows:

---

[1]Unless otherwise indicated, all section references are to the Internal
(continued...)

[*2]

| Year | Deficiency | Penalty sec. 6662(a) |
|------|-----------|----------------------|
| 2013 | $32,167 | $6,433 |
| 2014 | 18,237 | 3,647 |

After concessions,[2] the issues remaining for decision are whether:

(1) petitioners are entitled to deduct certain Schedule F expenses for the years at issue; (2) petitioners received Schedule F gross receipts of $15,000 and $5,000 for the years at issue, respectively; (3) petitioners are entitled to deduct alimony payments of $16,800 and $15,500 for the years at issue, respectively; and (4) petitioners are liable for accuracy-related penalties of $6,433 and $3,647 for the years at issue, respectively.

---

[1](...continued)
Revenue Code (Code), in effect for the years at issue, and all Rule references are the Tax Court Rules of Practice and Procedure. All monetary amounts are rounded to the nearest dollar. All percentages are rounded to the nearest whole number.

[2]Petitioners concede that they are not entitled to deduct $55,000 and $18,000 claimed for contract labor expenses on their Schedule F, Profit or Loss From Farming, for tax years 2013 and 2014 (years at issue), respectively. As will be discussed below, petitioners assert instead that they are entitled to deductions of $17,000 and $8,000 for equipment expenses for the years at issue, respectively. Additionally, petitioners do not dispute that they received and failed to report $72 of taxable interest for 2013.

**[*3]**                    FINDINGS OF FACT

Some of the facts are stipulated and are so found. The stipulation of facts and supplemental stipulation of facts with exhibits attached thereto are incorporated herein by this reference. Petitioners resided in California at the time the petition was filed.

A.    Cannabidiol Oil Extraction Venture

Jacob Berger (petitioner husband) obtained a bachelor's degree in biochemistry and a master's degree in pharmaceutical chemistry in Jerusalem, Israel. After completing his education abroad, petitioner husband and Evelyn Berger moved in 1981 to Palo Alto, California, when petitioner husband obtained employment at Syntex Corp. (Syntex), a pharmaceutical company. Petitioner husband remained employed at Syntex until 2010 when the company decided to close the Palo Alto site at which he worked. Upon termination of petitioner husband's employment, Syntex provided him with retirement benefits and a severance package.

In the process of closing its Palo Alto site, Syntex decided to sell some of its technical equipment. Since petitioner husband had developed an expertise in fixing technical equipment used for manufacturing pharmaceutical drugs while working at Syntex, the company asked him to fix and prepare the equipment for sale. Petitioner husband prepared the equipment for sale and, as compensation for

[*4] his services, received several pieces of equipment, which were stored unused in his garage until some point in the years at issue.

At a time not specified in the record, petitioner husband and Nadav Berger (petitioners' son) decided to enter into a business venture that involved the cultivation of cannabis plants for the purpose of extracting cannabidiol (CBD) oil and selling the CBD oil for medicinal use. Petitioner husband and petitioners' son entered into the venture with the understanding that petitioner husband would supply the necessary funding and, when the venture eventually became profitable, petitioner husband would recuperate the funds he had invested before profits were otherwise distributed to petitioner husband and petitioners' son.

During the years at issue petitioner husband provided the funds to purchase the equipment used to grow and maintain the cannabis and to pay the venture's other expenses, which included rent for a greenhouse in Santa Nella, California, electricity, water, and phone bills. Petitioner husband funded these expenses by either paying them directly or giving cash and checks to petitioners' son for him to do so. Petitioners also provided petitioners' son with a car to drive the 83 miles

[*5] between their home in Sunnyvale, California, and the greenhouse where the cannabis plants were to be cultivated in Santa Nella.[3]

In addition to funding the venture, petitioner husband also intended to develop and implement an improved method for extracting CBD oil. Before petitioner husband was able to implement the improved extraction method at the greenhouse, however, petitioners' son unexpectedly died on August 22, 2014. As a result of petitioners' son's death, petitioner husband ceased all operations of the venture.

B.    Alimony

On September 15, 1998, Merav Berger (petitioners' daughter) and Vardi Moscovitch (Mr. Moscovitch) married in Israel, where they resided with their two children. On May 22, 2003, petitioners' daughter and Mr. Moscovitch divorced, and on June 21, 2011, they executed a divorce agreement to that effect.

The divorce agreement included a visitation arrangement, which provided for travel arrangements in the event that petitioners' daughter moved to the United States with the children. Under the visitation arrangement, petitioners' daughter would be required to pay for the children to travel to Israel twice a year to visit Mr. Moscovitch and for Mr. Moscovitch to travel to the United States three times

_____

[3]During the years at issue petitioners' son lived with petitioners.

[*6] a year to visit the children. With respect to Mr. Moscovitch's travel, petitioners' daughter was obliged to provide a round trip airplane ticket, lodging at a hotel of her selection, access to a vehicle, and a stipend of $100 per day for up to 14 days. In addition, petitioners' daughter would be required to provide for three additional people, such as Mr. Moscovitch's mother, his girlfriend, and his girlfriend's son, to travel to the United States once a year. In the event that petitioners' daughter or petitioners, who were also bound by the divorce agreement, could not fulfill these obligations, the visitation arrangement stated that petitioners' daughter and the children would be required to return to Israel.

At a time not specified in the record, petitioners' daughter and her two children moved to the United States. During the years at issue petitioners' daughter and her children lived with and were financially supported by petitioners. Because petitioners' daughter was unable to fulfill her obligations under the visitation arrangement, petitioners provided the necessary financing on her behalf. As per the visitation arrangement, petitioners paid for the children to travel to Israel and for Mr. Moscovitch, Mr. Moscovitch's mother, and Mr. Moscovitch's girlfriend and her son to travel to the United States and petitioners provided the agreed-upon vehicle and stipend.

[*7] C.      Tax Returns, Notice, Petition, and Trial

Petitioners filed joint tax returns for the years at issue. On each return they claimed an alimony deduction for the travel expenses they paid to satisfy petitioners' daughter's obligations under the visitation arrangement. They also attached to each return a Schedule F reporting "medici[n]al herbs" as the principal crop or activity of the venture. Petitioners reported the following alimony deductions and Schedule F gross receipts and expenses for the years at issue:

|  |  | Schedule F gross receipts and expenses | | | | |
| --- | --- | --- | --- | --- | --- | --- |
| Year | Tax return deduction-- alimony | Sale of livestock and other resale items | Car and truck expenses | Rent | Utility expenses | Contract labor |
| 2013 | ($16,800) | $15,000 | ($16,950) | ($15,000) | ($12,000) | ($55,000) |
| 2014 | (15,500) | 5,000 | (11,200) | (10,000) | (9,600) | (18,000) |

By notice of deficiency dated June 6, 2018, respondent determined tax deficiencies of $32,167 and $18,237 for the years at issue, respectively. Respondent also determined that petitioners were liable for section 6662(a) accuracy-related penalties of $6,433 and $3,647 for the years at issue, respectively, for underpayments due to substantial understatements of income tax or negligence or disregard of rules or regulations for both years. Attached to the notice of deficiency was a Form 886-A, Explanation of Items, in which respondent explained

[*8] why he disallowed the claimed alimony deductions and Schedule F gross receipts and expenses.

On August 31, 2018, petitioners filed a petition with this Court seeking redetermination of the deficiencies set forth in the notice of deficiency. On December 11, 2019, this case was tried at the Court's trial session in San Francisco, California. At trial the parties jointly submitted a stipulation of facts and a supplemental stipulation of facts, which included copies of, inter alia, petitioners' joint tax returns for the years at issue, four checks that petitioners assert were payments for rent, three checks that petitioners assert were payments for water, and checks and withdrawal statements that petitioners assert were payments to petitioners' son to cover the venture's expenses.

These stipulations also included a copy of a Letter 950--dated August 17, 2017, and signed by the acting group manager of the revenue agent assigned to petitioners' case--with an attached Form 4549-A, Income Tax Examination Changes, which asserted the penalties against petitioners, as well as a copy of a Civil Penalty Approval Form, dated and signed in October 2017.[4]

---

[4]The Civil Penalty Approval Form is dated October 2, 2017. Although it appears to be signed on October 10, 2017, the date is difficult to read; indeed, the "17" for "2017" appears like a giant "D". Consequently, the Court will simply find that the form was dated and signed in October 2017.

**[*9]**                                    OPINION

I.      Burden of Proof

As a general rule, the Commissioner's determinations are presumed correct, and the taxpayer bears the burden of proving otherwise. Rule 142(a)(1); Welch v. Helvering, 290 U.S. 111, 115 (1933). Section 7491(a)(1) provides that the burden of proof will shift to the Commissioner when the taxpayer has introduced credible evidence with respect to any factual issue relevant to ascertaining the liability of the taxpayer for any tax. However, the burden of proof does not shift to the Commissioner unless the taxpayer complied with all substantiation requirements, maintained all required records, and cooperated with reasonable requests by the Internal Revenue Service. Sec. 7491(a)(2); Higbee v. Commissioner, 116 T.C. 438, 440-441 (2001). Section 7491(c) provides that the Commissioner shall have the burden of production with respect to any penalty. See Higbee v. Commissioner, 116 T.C. at 446-447.

A taxpayer who provides only self-serving testimony and inconclusive documentation is not considered to have provided credible evidence. Geiger v. Commissioner, T.C. Memo. 2006-271, aff'd, 279 F. App'x 834 (11th Cir. 2008); see Blodgett v. Commissioner, 394 F.3d 1030 (8th Cir. 2005), aff'g T.C. Memo. 2003-212; Higbee v. Commissioner, 116 T.C. at 445-446. Credible evidence is

**[\*10]** evidence that, "after critical analysis, the court would find sufficient upon which to base a decision on the issue if no contrary evidence were submitted". Higbee v. Commissioner, 116 T.C. at 442 (quoting H.R. Conf. Rept. No. 105-599, at 240 (1998), 1998-3 C.B. 747, 994).  Evidence is not credible if the Court is not convinced that it is worthy of belief.  Id.

Petitioners argue that they have satisfied the requirements of section 7491(a)(1) and respondent should bear the burden of proof.  We disagree.  On the basis of the record before us, we conclude that petitioners have not introduced credible evidence with respect to the factual issues presented.  Petitioners provided only incomplete and inconclusive documentation, along with uncredible testimony.  Because petitioners did not introduce credible evidence with respect to those factual issues, the burden of proof does not shift to respondent under section 7491(a)(1).  Accordingly, we need not decide whether petitioners have complied with the requirements of section 7491(a)(2), and petitioners retain the burden of proving they are entitled to the Schedule F deductions claimed.  See Rule 142(a). With respect to the Schedule F gross receipts, petitioners also bear the burden of proving that they received the reported income.  See sec. 6001.

[*11] II.     Schedule F Deductions

Deductions are a matter of legislative grace, and the taxpayer bears the burden of proving his or her entitlement to any deductions claimed. Rule 142(a); Deputy v. du Pont, 308 U.S. 488, 493 (1940); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934). This burden requires the taxpayer to demonstrate that the claimed deduction is allowable pursuant to some statutory provision and to substantiate the expense giving rise to the deduction claimed by maintaining and producing adequate records to enable the Commissioner to determine the taxpayer's correct liability. Sec. 6001; Higbee v. Commissioner, 116 T.C. at 440; Hradesky v. Commissioner, 65 T.C. 87, 90 (1975), aff'd per curiam, 540 F.2d 821 (5th Cir. 1976).

A taxpayer must further substantiate that the expense to which the deduction relates has been paid or incurred. See sec. 6001; Hradesky v. Commissioner, 65 T.C. at 90; sec. 1.6001-1(a), Income Tax Regs. In the event that a taxpayer establishes that a deductible expense has been paid but is unable to substantiate the precise amount, we generally may estimate the amount of the deductible expense, bearing heavily against the taxpayer whose inexactitude in substantiating the amount of the expense is of the taxpayer's own making. Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930). We cannot estimate a deductible

[*12] expense, however, unless the taxpayer presents evidence sufficient to provide some basis upon which an estimate may be made. Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985).

Section 162(a) allows a taxpayer to deduct all ordinary and necessary expenses paid or incurred during the taxable year in carrying on a trade or business. An expense is "ordinary" if it is "normal, usual, or customary" in the taxpayer's trade or business or arises from a transaction "of common or frequent occurrence in the type of business involved." Deputy v. du Pont, 308 U.S. at 495. An expense is "necessary" if it is "appropriate and helpful" to the taxpayer's business, but it need not be absolutely essential. Commissioner v. Tellier, 383 U.S. 687, 689 (1966) (quoting Welch v. Helvering, 290 U.S. at 113). However, a taxpayer may not deduct a personal, living, or family expense unless the Code expressly provides otherwise. Sec. 262(a). The determination of whether an expense satisfies the requirements of section 162 is a question of fact. Cloud v. Commissioner, 97 T.C. 613, 618 (1991) (citing Commissioner v. Heininger, 320 U.S. 467, 473-475 (1943)).

The disallowed trade or business expense deductions at issue here can be divided into two categories: (1) those that are subject to the more general substantiation requirements of section 6001, such as rent, utilities, and equipment, and

**[\*13]** (2) those that are subject to the strict substantiation requirements of section 274(d), such as car and truck. We will first consider the disallowed trade or business expense deductions subject to the general requirements of section 6001 and then turn to those deductions subject to the stricter requirements of section 274(d).

A.   Deductions Subject to the General Substantiation Requirements of Section 6001

1.   Rent

Petitioners claimed deductions of $15,000 and $10,000 for rent expenses for tax years 2013 and 2014, respectively, which respondent disallowed because petitioners failed to establish that these expenses were, in fact, paid or incurred during the tax years at issue and that the expenses were ordinary and necessary to the venture. To substantiate these expenses, petitioners submitted only four checks purportedly representing payments for the months of January, February, March, and April 2013. Each check was payable to "S. Salvador" (Mr. Salvador) in the amount of $1,250 but did not bear any indication that it was a payment for rent. During trial, petitioner husband stated that he and petitioners' son rented the greenhouse from Mr. Salvador, who wished to be paid in cash, and that they signed a written lease, but that Mr. Salvador refused to give them a copy of it.

[*14] Beyond these four checks and petitioner husband's testimony, however, petitioners failed to provide any additional evidence to corroborate that these checks were, in fact, payments for rent. Petitioners did not provide a lease or, at a minimum, an address for the greenhouse to evince that they were actually renting a greenhouse to grow cannabis and extract CBD oil. Petitioners also failed to introduce any bank statements to show consistent monthly withdrawals of $1,250 to corroborate their assertion that they paid Mr. Salvador during the years at issue. On the basis of the scant facts and evidence presented, we conclude that petitioners have failed to provide credible evidence to substantiate these deductions, and the Court sustains respondent's determinations to disallow the claimed Schedule F deductions for rent expenses for the years at issue.

2. Utilities

Petitioners claimed deductions of $12,000 and $9,600 for utility expenses, which included payments for water, electricity, and a cell phone, for the years at issue, respectively. Respondent disallowed these claimed deductions because petitioners had failed to establish that the expenses were, in fact, paid or incurred during the tax years at issue and that the expenses were ordinary and necessary to the venture. To substantiate the water expenses, petitioners submitted only copies of three checks in the amounts of $100, $100, and $150 made payable to the

[*15] "Santa Nella Water District" (Water District) and purportedly representing water payments for the months of January, March, and May 2013.

Notwithstanding these three checks to the Water District and petitioner husband's testimony, petitioners failed to provide any further evidence to corroborate that the checks were, in fact, payments for water for the venture or to otherwise corroborate their assertions that they made payments for electricity and a cell phone for the venture. With respect to the water expenses, petitioner husband testified during trial that he incurred $200 per month in water expenses for 12 months in 2013 and 8 months in 2014; yet the three checks that petitioners produced reflect payments of $100 for January 2013, $100 for March 2013, and $150 for May 2013. Petitioner husband asserted that he procured a copy of an invoice from the Water District, but he failed to submit it as evidence or provide bank statements showing monthly payments to corroborate his position.

On account of the inconsistency between other evidence presented and petitioner husband's testimony, especially in the light of the fact that petitioners failed to establish that they were even renting a greenhouse, we conclude that petitioners have not provided credible evidence to substantiate the claimed water expense deductions. With respect to the payments for electricity and a cell phone, petitioners similarly have failed to produce credible evidence to substantiate these

[*16] expenses. Accordingly, the Court sustains respondent's determinations to disallow the claimed Schedule F deductions for utility expenses for the years at issue.

### 3. Equipment

Petitioners claimed "contract labor" expense deductions of $55,000 and $18,000 for the years at issue, respectively, which respondent disallowed for lack of substantiation. Petitioner husband initially testified that these expenses comprised the costs of equipment, which ranged from $20,000 to $30,000 for 2013 and $30,000 to $40,000 for 2014, and contract labor. However, petitioners later conceded during trial that, after a subsequent review of the expenses for audit purposes, the cost of equipment was instead $17,000 for 2013 and $8,000 for 2014. Included in these amounts was the cost of the technical equipment that petitioner husband received as compensation from Syntex. Following trial, petitioners appear to have abandoned their argument that they are entitled to expense deductions related to contract labor, focusing instead on their entitlement to the revised equipment expense deductions.

To substantiate the revised equipment expenses, petitioners submitted a table for each tax year listing the type of equipment, number of units, unit price, and total cost. Petitioners also submitted copies of checks and withdrawal

[*17] statements, which they contend represent the money they gave to petitioners' son to pay the venture's expenses.

Section 167(a) allows, as relevant here, a deduction for "the exhaustion or wear and tear" of property used in a trade or business.  For some depreciable property, a taxpayer can make an election under section 179(a) to accelerate depreciation by deducting its cost as an expense for the taxable year in which the property is placed in service.  The election must specify the items of section 179 property to which the election applies and the portion of the cost of each which is to be taken into account under subsection (a).  Sec. 179(c)(1)(A).  The election must also be made on the taxpayer's first income tax return for the taxable year or a timely filed amended return.  Sec. 179(c)(1)(B); sec. 1.179-5(a), Income Tax Regs.

The record does not indicate that petitioners made an election under section 179(a) for either 2013 or 2014 to accelerate the depreciation of the equipment.  Indeed, the record lacks any documentation specifying each item of section 179 property to which the election applies.  Accordingly, petitioners are not entitled to deduct the equipment costs under section 179 as an expense for either 2013 or 2014 but, rather, must depreciate them under section 167, provided that they can show their entitlement to such depreciation deductions.

[*18] A taxpayer can claim depreciation deductions only for property it owns, Arevalo v. Commissioner, 124 T.C. 244, 251-252 (2005), aff'd, 469 F.3d 436 (5th Cir. 2006), and can start depreciating property only when it first places the property into service in its trade or business, sec. 1.167(a)-10(b), Income Tax Regs. To prove entitlement to a depreciation deduction, a taxpayer must also establish the property's depreciable basis by substantiating its cost, recovery period, and any previous allowable depreciation. See Cluck v. Commissioner, 105 T.C. 324, 337 (1995).

Petitioner husband stated that he included the cost of the technical equipment that he received from Syntex in the equipment expenses; however, he failed to provide any documentation listing the cost of the property, its recovery period, or any previous allowable depreciation on it. Furthermore, while petitioner husband claimed to have used the equipment to develop and test an improved method to extract CBD oil, he has not demonstrated when the equipment was placed into service for purposes of section 167.

With respect to the equipment listed on the tables, petitioner husband testified that he prepared the tables for audit purposes. Petitioner husband additionally avowed that the items listed were what he recalled "needed to be replaced" and what he and petitioners' son anticipated were needed to begin the

[*19] venture.  Petitioner husband also averred that, because he had given money to petitioners' son to purchase the equipment during the years at issue, he went online to a company that had supplied the listed items to find their prices.

These statements by petitioner husband indicate that:  (1) the tables listing the equipment expenses were prepared several years after petitioners filed their joint tax returns for the years at issue, (2) the tables and the items listed therein were reconstructed from petitioner husband's memory, and (3) petitioner husband lacks records, including receipts, of how much the items of equipment actually cost when purchased.  With respect to the copies of checks and withdrawal statements that petitioners provided, these copies reflect money given to petitioners' son for only eight months in 2013 and bear no indication as to how petitioners' son used the money for the venture.

On the basis of the scant evidence that petitioners produced, we conclude that they have not proven their entitlement to depreciation deductions under section 167 for the years at issue.  Accordingly, the Court sustains respondent's determinations to disallow the claimed Schedule F deductions for equipment expenses for the years at issue.

[*20] B.   Deductions Subject to the Strict Substantiation Requirements
of Section 274(d)

Petitioners claimed $16,950 and $11,200 in car and truck expense deductions for tax years at issue, respectively, which respondent disallowed for lack of substantiation.  In support of the underlying expenses, petitioner husband testified that the greenhouse in Santa Nella was 83 miles from their home in Sunnyvale. He asserted that he traveled to the greenhouse "once or twice a week" and that petitioners' son traveled to the greenhouse "three to four times a week".  According to petitioners, petitioner husband and petitioners' son traveled to the greenhouse a minimum of four to six times a week for 52 weeks in 2013 and four to six times a week for 32 weeks in 2014.  On the basis of these estimates, petitioners advance that they are entitled to a car and truck expense deduction ranging from $19,508 to $29,262 for 2013 and a deduction ranging from $11,899 to $17,848 for 2014.  Petitioners also contend that these miles should not be characterized as commuting miles because they represent travel between petitioner husband's "workplace in Sunnyvale" his home, and "the organic farm in Santa Nella", the greenhouse.

Section 274(d) imposes stricter substantiation requirements to be met before a taxpayer may deduct certain categories of expenses, including, inter alia,

[*21] expenses with respect to listed property as defined in section 280F(d)(4).

The term "listed property" includes passenger automobiles. Sec. 280F(d)(4)(A)(i).

To satisfy the requirements of section 274(d), a taxpayer must generally maintain adequate records or produce sufficient evidence corroborating his or her own statement which, in combination, are sufficient to establish the amount, the time and place of the travel, and the business purpose for each expenditure. See sec. 1.274-5T(b)(2), (6), (c)(1), Temporary Income Tax Regs., 50 Fed. Reg. 46014-46017 (Nov. 6, 1985).

Sec. 1.274-5T(c)(2), Temporary Income Tax Regs., 50 Fed. Reg. 46017-46018 (Nov. 6, 1985), provides, in relevant part, that "adequate records" generally consist of an account book, a diary, a log, a statement of expense, trip sheets, or a similar record made at or near the time of the expenditure or use, along with supporting documentary evidence. The Court may not use the rule established in Cohan v. Commissioner, 39 F.2d at 543-544, to estimate expenses covered by section 274(d). Sanford v. Commissioner, 50 T.C. 823, 827 (1968), aff'd per curiam, 412 F.2d 201 (2d Cir. 1969); sec. 1.274-5T(a), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985).

Moreover, expenses that a taxpayer generally incurs in commuting between his home and his place of business are personal and nondeductible. Commissioner

[*22] v. Flowers, 326 U.S. 465, 473-474 (1946); Heuer v. Commissioner, 32 T.C. 947, 951 (1959), aff'd per curiam, 283 F.2d 865 (5th Cir. 1960); secs. 1.162-2(e), 1.262-1(b)(5), Income Tax Regs.  Expenses incurred for traveling between two or more places of business, however, may be deductible under section 162 if incurred for business reasons.  Steinhort v. Commissioner, 335 F.2d 496, 503-504 (5th Cir. 1964), aff'g and remanding T.C. Memo. 1962-233; Heuer v. Commissioner, 32 T.C. at 953; see also Fausner v. Commissioner, 55 T.C. 620 (1971) (permitting section 162 deductions for travel between jobs or job locations).  But if one of the places of business is the taxpayer's residence, the residence must be the taxpayer's principal place of business for the trade or business the taxpayer conducts at those other locations.  See, e.g., Strohmaier v. Commissioner, 113 T.C. 106 (1999).

Petitioners have not produced adequate records or, at a minimum, any evidence to corroborate petitioner husband's statements regarding the car and truck expenses.  They have not provided an account book, a log, or any other form of documentary evidence prepared contemporaneously with any expenditure detailing its amount, the time and place it was incurred, or its business purpose to satisfy the strict substantiation requirements of section 274(d).  Moreover, petitioners have not introduced any documentation proving that their home in Sunnyvale served as the principal place of business for the venture; nor does the

[*23] record support a such a finding. See, e.g., Rehman v. Commissioner, T.C. Memo. 2013-71, at *140. Accordingly, the Court sustains respondent's determinations to disallow the claimed Schedule F deductions for car and truck expenses for the years at issue.

III.    Schedule F Gross Receipts

Petitioners reported gross receipts of $15,000 and $5,000 on their Schedules F for the tax years 2013 and 2014, respectively. In the notice of deficiency respondent disallowed the reported gross receipts because petitioners failed to provide any evidence that they had, in fact, received any proceeds from the venture.

Gross income includes all income from whatever source derived, see sec. 61(a), and taxpayers are required to keep books and records sufficient to establish their Federal income tax liabilities, see sec. 6001. Where taxpayers fail to maintain adequate records to establish that liability, the Commissioner may reconstruct their income by any method that the Commissioner believes reflects income clearly. See sec. 446(b); see also Palmer v. U.S. IRS, 116 F.3d 1309, 1312-1313 (9th Cir. 1997); Parks v. Commissioner, 94 T.C. 654, 658 (1990); Petzoldt v. Commissioner, 92 T.C. 661, 686-687 (1989). The Commissioner's method need not be exact; however, it must be reasonable in the light of the surrounding facts

**[*24]** and circumstances.  See Petzoldt v. Commissioner, 92 T.C. at 687; see also

Cracchiola v. Commissioner, 643 F.2d 1383, 1384-1385 (9th Cir. 1981), aff'g T.C.

Memo. 1979-3 and three other cases.

Petitioners did not submit any evidence to establish that the venture re-

ceived gross receipts as reported on their Schedules F for the years at issue, as

required under section 6001.  Thus, respondent determined that petitioners did not

receive the income.  Because of the lack of evidence to support petitioners'

reported Schedule F gross receipts, we find that respondent appropriately disal-

lowed the income and, accordingly, sustain respondent's determinations to

disallow the reported Schedule F gross receipts for the tax years at issue.[5]

IV.   Alimony

Section 215(a) allows a taxpayer a deduction for alimony payments during

the taxable year.  The term "alimony" is defined for purposes of section 215(a) as

any payment of alimony that is includible in the income of the recipient under

section 71.  See sec. 215(b).  In pertinent part, section 71(b)(1) defines "alimony"

as any payment in cash that satisfies four requirements:  (1) the payment is

---

[5]Respondent also had raised a challenge as to whether petitioners had established that they were carrying on a trade or business during the tax years at issue.  With our decision to sustain respondent's determinations to disallow the Schedule F gross receipts and expenses, however, we need not consider respondent's additional challenge.

[*25] received by (or on behalf of) a spouse under a divorce or separation instrument; (2) the divorce or separation instrument does not designate the payment as a payment that is not includible in gross income under this section and not allowable as a deduction under section 215; (3) in the case of an individual legally separated from his spouse under a decree of divorce or of separate maintenance, the payee spouse and the payor spouse are not members of the same household at the time the payment is made; and (4) there is no liability to make the payment for any period after the death of the payee spouse, and there is no liability to make any payment (in cash or property) as a substitute for such payments after the death of the payee spouse. Secs. 71(b)(1), 215(b).

Petitioners claimed alimony deductions of $16,800 and $15,500 for 2013 and 2014, respectively, which respondent disallowed. Petitioners argue that they should be entitled to the claimed alimony deductions because they were bound by the divorce agreement as guarantors in the event that petitioners' daughter was unable to satisfy her obligations under the visitation arrangement. Petitioners further assert that they paid more than 50% of her financial support during the years at issue, making petitioners' daughter their dependent and entitling them to the alimony deductions.

[*26] A deduction for alimony under section 215 is permitted only to the obligor spouse; "[i]t is not allowed to * * * any other person who may pay the alimony obligation of such obligor spouse." Sec. 1.215-1(b), Income Tax Regs. Assuming, arguendo, that the obligations required under the visitation agreement constitute alimony, petitioners are not entitled under section 215 and the accompanying regulations to deduct any payments made on behalf of their daughter. Accordingly, the Court sustains respondent's determinations to disallow the alimony deductions for the years at issue.

## V.    Section 6662(a) Penalty

Section 6662(a) and (b)(1) and (2) authorizes a 20% accuracy-related penalty on any underpayment of Federal income tax attributable to a taxpayer's negligence or disregard of rules or regulations or a substantial understatement of income tax. "'[N]egligence' includes any failure to make a reasonable attempt to comply with the provisions of * * * [the Code], and the term 'disregard' includes any careless, reckless, or intentional disregard." Sec. 6662(c). "'Negligence' also includes any failure by the taxpayer to keep adequate books and records or to substantiate items properly." Sec. 1.6662-3(b)(1), Income Tax Regs. For individual taxpayers there is a substantial understatement of income tax if the amount of the understatement for the taxable year exceeds the greater of 10% of the tax

[*27] required to be shown on the return for the taxable year or $5,000. Sec. 6662(d)(1)(A).

As indicated above, the Commissioner bears the burden of production with respect to an individual taxpayer's liability for accuracy-related penalties. Sec. 7491(c); Higbee v. Commissioner, 116 T.C. at 446. In Frost v. Commissioner, 154 T.C. 23, 34 (2020), we held that the Commissioner's initial burden of production under section 7491(c) includes producing evidence that he has complied with the procedural requirements of section 6751(b); and, once he has satisfied this initial burden, the taxpayer must come forward with contrary evidence. Section 6751(b)(1) requires that the initial determination of certain penalties be "personally approved (in writing) by the immediate supervisor of the individual making such determination or such higher level official as the Secretary may designate." See Graev v. Commissioner, 149 T.C. 485, 492-493 (2017), supplementing and overruling in part 147 T.C. 460 (2016); see also Clay v. Commissioner, 152 T.C. 223, 248 (2019) (quoting section 6751(b)(1)), aff'd, 990 F.3d 1296 (11th Cir. 2021).

Section 6664(c)(1) provides an exception to the imposition of a section 6662(a) accuracy-related penalty if it is shown that there was reasonable cause for the underpayment and the taxpayer acted in good faith. As a general rule, "[t]he

[*28] determination of whether a taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account all pertinent facts and circumstances." Sec. 1.6664-4(b)(1), Income Tax Regs. In making that determination, "the most important factor" is usually "the extent of the taxpayer's effort to assess the taxpayer's proper tax liability." Id.

Respondent determined section 6662(a) accuracy-related penalties of $6,433 and $3,647 for the years at issue, respectively. Respondent contends that petitioners are liable for the penalties as a result of negligence under section 6662(b)(1) or, in the alternative, substantial understatements of income tax under section 6662(b)(2).[6]

We conclude that respondent has met his burden with respect to the accuracy-related penalties attributable to substantial understatements of income tax under section 6662(b)(2) for the years at issue. Accordingly, we need not address whether the underpayments of tax were also attributable to petitioners' negligence under section 6662(b)(1). Respondent has introduced evidence to establish his revenue agent's compliance with the procedural requirements of section 6751(b)(1) in obtaining supervisory approval to assert the penalty under section

_____

[6]Only one accuracy-related penalty may be applied with respect to any given portion of an underpayment, even if that portion is subject to the penalty on more than one ground. Sec. 1.6662-2(c), Income Tax Regs.

[*29] 6662(a). See Flume v. Commissioner, T.C. Memo. 2020-80, at *34. Petitioners have not claimed, nor does the record support a conclusion, that respondent formally communicated his initial penalty determination before August 17, 2017, the date that the revenue agent's acting group manager signed the Letter 950 with the attached Form 4549-A. See Frost v. Commissioner, 154 T.C. at 36; Flume v. Commissioner, at *34-*35.

After concluding that respondent has established compliance with the requirements of section 6751(b)(1), we now turn to the remainder of his initial burden of production under section 7491(c)--namely, whether petitioners substantially understated their income tax for the tax years at issue. As we conclude above, respondent correctly determined that petitioners' income tax was understated by $32,167 and $18,237 for the years at issue, respectively. These amounts exceed the greater of 10% of the tax that respondent determined was required to be shown on petitioners' joint tax returns for those years or $5,000. Therefore, we hold that respondent has met his burden of production to show that petitioners' underpayment for each of the years at issue was attributable to a substantial understatement of income tax. Petitioners now bear the burden of showing that they had reasonable cause for the underpayments and that they acted in good faith. See sec. 6664(c)(1); Higbee v. Commissioner, 116 T.C. at 446-447.

[*30] Petitioners argue that they provided petitioners' son with cash and checks to purchase the raw materials and equipment and to pay the venture's operating expenses. They state that petitioners' son was responsible for managing the receipts supporting these expenses but his unexpected death, which occurred less than two months before they filed their 2013 joint tax return on October 9, 2014, hindered their collecting the receipts for the expenses reported for that year. Petitioners submit that the death of petitioners' son also hindered their collecting the receipts for the expenses reported on their 2014 joint tax return, which they filed on August 17, 2015. Petitioners advance that the death of petitioners' son and the resulting difficulty in collecting the necessary receipts to substantiate the expenses constitute reasonable cause for the underpayments.

Notwithstanding petitioners' personal tragedy, respondent contends that petitioners failed to keep adequate books and records to substantiate their reported expenses. Respondent highlights petitioners' concession that they incorrectly determined the amounts of equipment expenses for the tax years at issue as further support of petitioners' failure to determine their proper tax liabilities for the tax years at issue. Accordingly, respondent argues that the penalty determinations should be sustained. We agree.

[*31] While we are sympathetic to the hardship that petitioners faced as a result of their son's unexpected death, that hardship does not constitute reasonable cause for underpayments of Federal income tax within the meaning of section 6664(c). See Martinez v. Commissioner, T.C. Memo. 2016-182, at *19-*20; see also sec. 1.6664-4(b), Income Tax Regs.  Petitioner husband, who is an educated individual, testified that he was the financier of the venture and intended to recuperate the money he expended to commence it.  The facts and circumstances in this case indicate, however, that petitioners did not attempt to keep adequate books and records to detail the expenses incurred and assess their proper tax liabilities.

Respondent's position that petitioners failed to assess their proper tax liabilities is bolstered by their concession that their claimed Schedule F deductions for equipment expenses were incorrect after later reviewing additional documentation, as well as the fact that they do not dispute their receipt and failure to report $72 of taxable interest for tax year 2013.  The Court, therefore, holds that petitioners are liable for the section 6662(a) penalties for the tax years at issue.

VI.   Conclusion

For the reasons above, the Court sustains respondent's determinations to disallow petitioners' alimony deductions, Schedule F gross receipts, and Schedule F expense deductions.  The Court further sustains respondent's determinations

[*32] relating to the accuracy-related penalties under section 6662(a) for the years at issue.  The Court has considered all other arguments made by the parties, and to the extent not discussed above, find those arguments to be irrelevant, moot, or without merit.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.